| | |
|---|---|
| NANCY LANOVAZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWININGS NORTH AMERICA, INC.,<br><br>Defendant. | Case No. C-12-02646-RMW<br><br>**ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Re Docket No. 29] |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

## I. INTRODUCTION

Nancy Lanovaz, on behalf of herself and a purported class of similarly situated individuals, filed a complaint on May 23, 2012, asserting claims against Twinings North America, Inc. ("Twinings") seeking monetary and injunctive relief to redress her and her alleged class members for the losses they incurred as a result of their purchases of allegedly misbranded Twining's green tea and to prevent further misbranding. The tea box has a label describing the tea as a "natural source of antioxidants." After Twinings filed a motion to dismiss but before it was heard, plaintiff filed her Amended Complaint ("AC") in which she asserts claims under Cal.

Bus. & Prof. Code § 17200 *et seq.* (California Unfair Competition Law or "UCL"), Cal. Bus. & Prof. Code § 17500 *et seq.* (California False Advertising Law or "FAL"), Cal. Civ. Code § 1750 *et seq.* (California Consumers Legal Remedies Act or "CLRA"), Cal. Civ. Code § 1790 *et seq.* (Song-Beverly Consumer Warranty Act or "Song-Beverly"), and 15 U.S.C. § 2301 *et seq.* (Magnuson-Moss Warranty Act or "Magnuson-Moss"). The basic claim underlying plaintiff's causes of action is that Twinings' "natural source of antioxidants" label violates California law and is deceptive. Plaintiff asserts broadly that defendant is:

> A. Making unlawful nutrient content claims on the labels of food products that fail to meet the minimum nutritional requirements legally required for the nutrient content claims being made;
>
> B. Making unlawful antioxidant claims on the labels of food products that fail to meet the minimum nutritional requirements legally required for the antioxidant claims being made;
>
> C. Making unlawful and unapproved health claims about their products that are prohibited by law; and
>
> D. Making unlawful claims that suggest to consumers that their products can prevent the risk or treat the effects of certain diseases like cancer or heart disease.

AC 9.

Defendant Twinings seeks to dismiss the AC and contends that plaintiff's claims fail for four reasons: (1) they are all preempted; (2) plaintiff cannot show Article III injury in fact; (3) plaintiff's claims are not plausible; and (4) none of plaintiff's causes of action states a viable claim. Defendant also requests that the court strike as "immaterial" all allegations concerning Twinings' advertisements and a press release that plaintiff did not see and labels on products she did not buy.

## II. ANALYSIS

### A. Scope of Labels and Products At Issue

Twinings moves to strike the portions of the claims regarding statements that plaintiff did not see and concerning products she did not buy. The only product that Lanovaz specifically

identifies that she purchased is Twinings' "Green Tea, 1.41 oz box." FAC ¶ 111. She alleges she relied on the label on the box stating "natural source of antioxidants." FAC ¶ 113. Although she does refer to having bought other Twinings products and viewing its website (*see, e.g.,* ¶¶ 87, 111), she does not identify those other products or other specific information on which she relied in purchasing Twinings' products. Although she does not allege that she relied on information on Twinings' website, she included in her AC information health information that was purportedly on the website.

One generally cannot expand the scope of his or her claims to include a product not purchased or advertisements not relied upon. *See, e.g., Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (in a proposed class action, finding that the named plaintiff "cannot expand the scope of his claims to include . . . advertisements relating to a product that he did not rely upon."). The statutory standing requirements of the UCL and CLRA are narrowly prescribed and do not permit such generalized allegations. *Id.*

Lanovaz also purports to represent the class of people who purchased Twinings' Green Tea product over the last four years and brings claims based upon those unidentified products as well. FAC ¶ 122. Although courts are split as to whether actual purchase is required to establish the requisite injury-in-fact, *see Miller v. Ghirardelli Chocolate Co.*, 2012 WL 6096593, at *6-7 (N.D. Cal. Dec. 7, 2012) (recognizing split and analyzing cases), in this case, the court agrees with defendants that there can be no requisite *pecuniary* injury where plaintiff did not herself purchase the product at issue. *See Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[C]laims related to products not purchased must be dismissed for lack of standing."); *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012) (same); *Mlejnecky v. Olympus Imaging Am. Inc.*, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011) (same); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3 (N.D. Cal. Jan.

10, 2011) (same); *Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) ("[P]laintiff cannot expand the scope of h[er] claims to include a product [s]he did not purchase or advertisements relating to a product that [s]he did not rely upon."); *see generally, TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 n.1 (9th Cir. 2011) ("Plaintiffs filing an unfair competition suit must prove a pecuniary injury.") Therefore, Lanovaz's claims, brought on her own behalf or on behalf of a class, cannot survive a motion to dismiss where there is no allegation that she purchased the product.

Plaintiff's allegations are too indefinite to allow her to proceed on her own behalf or as a representative of a class on any claim except one based upon the green tea product bearing the label "natural source of antioxidants." To the degree that Lanovaz has attempted to make claims based upon different labels or products other than green tea, the court strikes those allegations as immaterial with leave to amend. Plaintiff must identify the specific Twinings' products which she claims she purchased and specifically set forth any misleading label or information on which she relied in making her purchase. *See* Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud or mistake.").

**B.     Preemption**

Defendant contends that plaintiff's claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA") as amended by the Nutrition Labeling and Education Act ("NLEA"). The FDCA gives the Food and Drug Administration ("FDA") the responsibility to protect public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2). In 1990 Congress passed the NLEA to specifically address labeling requirements for certain food and beverage products. Pub. L. No. 101–535, 104 Stat. 2353 (1990). The FDA has promulgated regulations to carry out its responsibilities. *See*, *e.g.*, 21 C.F.R. 101.54(g) (regulation of nutrient content claims using the term "antioxidant"). The NLEA provides for

national uniform nutrition labeling and expressly preempts state law that is inconsistent with its requirements. 21 U.S.C. § 343-1(a). In addition, there is no private right of action under the FDCA. 21 U.S.C. § 337(a). Defendant, therefore, submits that plaintiff's complaint is preempted.

Plaintiff counters that she is not suing under the FDCA but rather under California state law and specifically California Health & Safety Code section 110100(a) which adopts "[a]ll food labeling regulations of the FDA and any amendments to those regulations" and section 110670 which provides that "[a]ny food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto."

Twinings argues that plaintiff should not be able to make an end run around the no private action rule by indirectly bringing a claim to obtain redress for an alleged violation of the FDA labeling regulations. Defendant relies heavily on *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), where the Ninth Circuit held that a plaintiff juice manufacturer could not sue a competitor under the Lanham Act for using a deceptive label where the label apparently was authorized under FDA regulations. *Id.* at 1177. The court concluded:

> We are primarily guided in our decision not by Coca–Cola's apparent compliance with FDA regulations but by Congress's decision to entrust matters of juice beverage labeling to the FDA and by the FDA's comprehensive regulation of that labeling. To give as much effect to Congress's will as possible, we must respect the FDA's apparent decision not to impose the requirements urged by Pom. And we must keep in mind that we lack the FDA's expertise in guarding against deception in the context of juice beverage labeling.

*Id.*

*Pom* does not preclude plaintiff's claim. First, the appellate court did not hold that the state law claims asserted were preempted or otherwise barred. Instead, the court applied a principle of deference to the expertise of the FDA. *See Astiana v. Hain Celestial Group*, 2012

WL 5873585, at *2 (N.D. Cal. Nov. 19, 2012). *Pom* affirmed the district court's summary judgment to the extent it barred Pom's Lanham Act claim but vacated summary judgment to the extent it had ruled that Pom lacked statutory standing on its state UCL and FAL claims. Those claims were remanded to the district court. *Pom*, 679 F.3d at 1179.

The NLEA does expressly preempt state labeling laws that cover certain described foods. 21 U.S.C. § 343–1. This statutory provision, however, has been repeatedly interpreted not to preempt requirements imposed by state law that effectively parallel or mirror the relevant sections of the NLEA. *See*, *e.g.*, *New York State Rest. Ass'n*, 556 F.3d 114, 123 (2nd Cir. 2009); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 370 (N.D. Cal. 2010); *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1091 (2008). Therefore, it appears clear that the NELA contemplates state enactment and enforcement of labeling requirements as long as they are identical to or parallel NLEA requirements. Although Congress intended to preempt non-identical requirements in the field of food labeling, the purpose of the NLEA is not to preclude all state regulation of nutritional labeling, but to prevent State and local governments from adopting inconsistent requirements with respect to the labeling of nutrients. *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *9 (N.D. Cal. May 26, 2011). Congress declared that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section [343–1(a) ] of the [FDCA]." *Id.* (quoting Pub. L. No. 101–535, 104 Stat. 2353, 2364 (1990)).

The preemption issue here is whether the alleged violations that Lanovaz seeks to enforce are violations of the FDA regulations (incorporated into California law) or whether she is making claims that go beyond what the regulations require. There is a two-part test to determine statutory preemption in such cases: there must be (1) a federal requirement, and (2) the challenged state or local rule must impose a requirement that is different from, or adds additional obligations to, the

federal requirement. *Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 841 (9th Cir. 2011), *vacated on other grounds*, 699 F.3d 1103 (9th Cir. 2012). The FDA regulates the labels. Thus, the issue here becomes whether the label violations on which Lanovaz bases her claim require imposing a requirement that is different from the FDA regulations.

Lanovaz asserts that Twinings' claim that its green tea is a "natural source of antioxidants" violates the FDA's regulation of nutrient, antioxidant, and health claims and that since California has incorporated those regulations, her claim is not preempted. A health claim is a statement that expressly or implicitly links the consumption of a food to a disease or health-related condition. *See* 21 C.F.R. §§ 101.14(a)(1), 101.14(a)(2), 101.14(a)(5). Lanovaz depends on representations made on Twinings' website to support her health claims. However, the court struck claims depending upon information on the website as plaintiff has not adequately alleged that she bought any particular product based upon specific representations or statements on the website.

The more difficult question is whether the statement "natural source of antioxidants" is a federally regulated nutrient content claim. "A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling . . . (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation." 21 C.F.R. § 101.13(b). Under California law "[a]ny food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r)(21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto." Cal. Health & Safety Code § 110670. Twinings argues that its label does not characterize the *level* of antioxidant but only claims its tea is a "natural source," and therefore, it is not a nutrient content claim. Twinings further asserts that any interpretation of "source of" by the courts could result in the term being defined differently under state and federal law. *See Turek v. Gen. Mills, Inc.*, 662 F3d 423, 427 (7th Cir. 2011) ("consistency is not the test;

identity is"). Therefore, Twinings concludes, the court should not define the term and should defer to the expertise of the FDA. *See Pom*, 679 F.3d at 1177.

Lanovaz does not dispute the truth of the statement that green tea is a source of antioxidants. Rather, Lanovaz submits that describing the tea as a "source of" antioxidants constitutes a "nutrient content claim" and that Twinings' label violates the requirements for a nutrient content claim.

Under 21 C.F.R. § 101.54(g) a nutrient content claim that characterizes the level of antioxidant nutrients present in a food may be used on the label or in the labeling of that food when:

> (1) An RDI (Reference Daily Intake) has been established for each of the nutrients;
>
> (2) The nutrients that are the subject of the claim have recognized antioxidant activity. . . ;
>
> (3) The level of each nutrient that is the subject of the claim is sufficient to qualify for the [type of claim made]; and
>
> (4) The names of the nutrients that are the subject of the claim are included as part of the claim . . . .

Twinings' "natural source of antioxidants" label does not meet these requirements. Therefore, if the label makes a nutrient content claim, Lanovaz's state UCL and FAL claims are viable.

The FDA has not officially defined "source of" or "natural source of" as making a nutrient content claim. However, it has identified similar terms such as "excellent source of," "good source of," "contains," and "provides" as the operative words in nutrient content claims.

In a March 24, 2011 warning letter issued to Jonathan Sprouts, Inc., the FDA advised that certain claims using the word "source" were nutrient content claims. AC ¶ 54. The FDA said that by using the term "source" the company "characterize[d] the level of nutrients of a type required to be in nutrition labeling" and are subject to FDA regulations. *Id.* The warning stated

further that the FDA had not defined the characterization "source" by regulation and the characterization could not be used in a nutrient content claim. *Id.*

Based upon the allegations in the AC, which the court must accept as true, the court is satisfied that Lanovaz is asserting a "nutrient content claim" under state law that is identical to what the FDA describes as a nutrient content claim. Therefore, her state claims are not preempted.

**C.     Injury in Fact**

Article III standing, for purposes of a motion to dismiss, requires a plaintiff to plead "injury in fact," "a causal connection between the injury and the conduct complained of," and it must be likely the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In particular, the injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks omitted.)

Article III's injury-in-fact requirement is effectively the same as that under the UCL and FAL. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) (the law expressly adopted the federal standard). The only difference is that injury-in-fact under the UCL and FAL must be an economic injury while Article III allows standing for non-economic injuries. *Id.* at 323; *see also TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 n.1 (9th Cir. 2011) (UCL injury-in-fact standing is slightly narrower than Article III standing because plaintiff must prove a pecuniary injury).

Here, Twinings argues that Lanovaz's claimed injuries arise from her allegation that Twinings' products are "legally worthless," FAC ¶ 1, but that this is a theoretical construct and not an injury in fact. Twinings points out that Lanovaz paid for tea which was not tainted, spoiled, adulterated or contaminated and she consumed it without incident or physical injury.

Lanovaz, on the other hand, argues that she is not claiming she suffered a health related injury but is contending that Twinings made an unlawful claim on its product label, which misled Lanovaz into buying Twinings tea that she otherwise would not have purchased or paid a premium for. FAC ¶¶ 110-21. Here, defendant's argument misses the mark because plaintiff's injury is based on the allegation that she would not have *purchased* the product if she had known that the label was unlawful. The alleged purchase of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's unfair competition claims. *See Chacanaca v. Quaker Oats, Co.*, 752 F. Supp. 2d 1111, 1125 (2012); *Chaves v. Blue Sky Natural Beverage Co.*, 340 Fed. App'x 359, 360-61 (9th Cir. 2009); *Kashin v. Hershey Co.*, 2012 WL 5471153, at *6 (N.D. Cal. Nov. 11, 2012); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159381, at *2-3 (N.D. Cal. Jan. 10, 2011). To the extent the injury alleged is reliance on a misleading, as opposed to an unlawful, label, whether plaintiff was actually misled is a factual question that is an inappropriate basis for dismissal at this stage. *See Kashin*, 2012 WL 5471153, at *7 ("[T]he issues Defendant raise ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is . . . beyond the scope of this Rule 12 (b)(6) motion."); *Ben & Jerry's*, 2011 WL 2111796, at *4 (same).

**D.  Implausibility**

Twinings claims that plaintiff's alleged reliance on a "hyper-technical" violation of FDA regulations is implausible on its face. Lanovaz claims that she thought she was purchasing tea that met the minimum threshold to make an antioxidant and nutrient claim and that buying healthy food products was important to her. Twinings claims that it is implausible that plaintiff would find the statement "natural source of antioxidants" misleading. The statement is literally true and Twinings asserts that the reasonable consumer would not know that the FDA has not

defined "source" and "natural source" and, therefore, that the terms have no ascribed meaning. Thus Twinings submits that plaintiff's claim does not meet the plausibility requirement of *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The plaintiff's allegation in her AC, which must be considered true for pleading purposes, is that the label meant that the tea met a minimum nutritional requirement and that she would not have bought it, or paid a premium for it, had she known that it did not meet the minimum requirements for listing a product as containing antioxidants. The court finds that plaintiff meets the plausibility requirement.

**E.     Claims Under the Song-Beverly Consumer Warranty Act and Magnuson-Warranty Act**

Lanovaz brings breach of warranty claims under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.*, and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Plaintiff alleges that Twinings' label constitutes an express warranty, which the Song-Beverly Act defines as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." Cal. Civ. Code § 1791.2 (emphasis added). The Act defines a "consumer good" as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for . . . consumables." *Id.* § 1791(a) (emphasis added). Twinings' tea is a "consumable[]," which means "any product that is intended for consumption by individuals." Cal. Civ. Code § 1791(d). Since California Civil Code section 1791.2 defines an express warranty as applying only to "consumer goods," and the definition of consumer goods excludes consumables, plaintiff cannot successfully allege that Twinings created an express warranty on its product. Therefore, the claim is dismissed without leave to amend.

Plaintiff's Magnuson–Moss Act claim also fails. The Act defines a written warranty as

any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time. 15 U.S.C. § 2301(6)(A). A label, such as a "natural source of antioxidants," does not constitute a warranty against a product defect. *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766 at *3 (N.D. Cal. July 20, 2012); *Jones v. ConAgra Foods, Inc.*, 2012 WL 6569393, *12-13 (N.D. Cal. Dec. 17, 2012). Since plaintiffs do not allege that the statement on Twinings' label affirms that the tea is "defect free," the court dismisses without leave to amend plaintiff's Magnuson–Moss Act claim.

### F. Restitution Based on Unjust Enrichment

"The doctrine [of unjust enrichment] applies where plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009). Here, plaintiff's claim for unjust enrichment is based on the same allegations as the UCL, FAL, and CLRA claims. Lanovaz's claim is simply a reformulation of her UCL, FAL, and CLRA claims. Restitution is already a remedy under the UCL, so plaintiff's restitution claim is superfluous. *Barocio v. Bank of Am.*, 2012 WL 3945535, at *4 (N.D. Cal., Sept. 10, 2012). "[P]laintiff[] cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims." *Id.* (*quoting In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (citing cases)). The court, therefore, dismisses the restitution claim without leave to amend.

### III. ORDER

The court dismisses with prejudice Lanovaz's Song-Beverly Consumer Warranty Act,

Magnuson-Moss Warranty Act, and unjust enrichment claims. The court strikes without prejudice all claims based upon statements other than the "natural source of antioxidants" label on Twinings' Green Tea. The court otherwise denies Twinings' motion to dismiss.

The court hereby sets an initial case management conference for April 19, 2013.

Dated: February 25, 2013

*Ronald M. Whyte*
Ronald M. Whyte
United States District Court Judge