UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NANCY LANOVAZ, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>TWININGS NORTH AMERICA, INC.,<br><br>        Defendant. | Case No. C-12-02646-RMW<br><br>**ORDER GRANTING IN PARTY AND DENYING IN PARTY DEFENDANT'S MOTION TO DISMISS OR STRIKE**<br><br>[Re Docket No. 51] |

Nancy Lanovaz brings claims against Twinings arising from her purchase of allegedly misbranded boxes of green and black tea. She claims that the labels and statements made on Twinings' website violate federal rules, which California has incorporated into state law. At issue in this motion to dismiss and strike are (1) whether Lanovaz can bring claims based on products she did not actually purchase and (2) whether she has adequately pled reliance on specific statements on Twinings' website. For the reasons explained below, the court grants in part and denies in part Twinings' motion.

## I. BACKGROUND

Lanovaz alleges that she paid a premium for Twinings' green and black tea and would not have purchased it but for the unlawful labeling. She asserts that Twinings violated California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and the Consumers Legal Remedies Act ("CLRA"). Second Amended Complaint ("SAC") ¶¶ 157-217, Dkt. No. 48. Lanovaz seeks monetary and injunctive relief on her own behalf and on behalf of a class of tea purchasers who bought allegedly misbranded products. At the heart of Lanovaz's claim is the label describing the tea as a "natural source of antioxidants."

Lanovaz filed her SAC on March 19, 2013, in response to the court's order striking without prejudice some of her claims. Order re MTD, Dkt. No. 46. In the SAC, Lanovaz added claims against numerous Twinings' products that contain the label a "natural source of antioxidants." SAC ¶¶ 7, 8. She also amended her allegations related to the website after the court ordered that she "specifically set forth any misleading label or information on which she relied in making her purchase." Order re MTD 4. Twinings now brings a second motion to dismiss arguing that Twinings' amendments are inadequate.

## II. ANALYSIS

Twinings challenges two aspects of the amended complaint. It asks the court to strike as immaterial all statements regarding products that Lanovaz did not buy and labeling or advertising which she did not see or rely upon. It also urges the court to dismiss claims based on products Lanovaz did not purchase and sections of the website she did not rely on in making her decision to purchase its tea.

### A. Not Purchased Products

In Lanovaz's amended complaint, she added numerous products that she did not purchase, but that do contain the exact same label as on the products she did purchase. *See, e.g.,* SAC ¶¶ 7, 8, 142-45. Courts are divided on whether a putative class representative can bring claims on behalf of a class for products the representative did not purchase. The deciding factor is whether the products are sufficiently similar. *See Miller v. Ghirardelli Chocolate Co.*, 2012 WL 6096593, at *6-7 (N.D. Cal. Dec. 7, 2012) ("The majority of the courts that have carefully analyzed the question hold that a

plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.").

Although the Ninth Circuit has not provided guidance on this specific issue, it has held that courts should not be too rigid in applying standing requirements to proposed classes. The Ninth Circuit advised that when determining whether a plaintiff who suffered one type of injury has standing to sue on behalf of a class for a different although similar injury, courts "must be careful not to employ too narrow or technical an approach. Rather, [courts] must examine the questions realistically: [they] must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001) *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005). In *Armstrong,* the court found that the named plaintiffs had standing to represent a class of disabled persons because they established the same injury—discrimination that resulted in the denial of a service—even though the disabilities and exact harm were different. *Id.*

The Supreme Court in *Gratz v. Bollinger* held that a student had standing to challenge race-based admissions criteria for both freshmen and transfer applicants even though he had only applied as a freshman. 539 U.S. 244 (2003). The Court found standing because "the University's use of race in undergraduate transfer admissions does not implicate *a significantly different set of concerns* than does its use of race in undergraduate freshman admissions." 539 U.S. at 265 (emphasis added). Although the student alleged that he intended to apply to transfer if the discriminatory admissions system ended, the majority's analysis focused on the similarity of the admissions criteria for transfers and freshmen. *Id.* at 263-67, 283. In the end, the court looked to the broader rationale for standing and found that the plaintiff had a sufficient "personal stake" in the litigation to allow it to proceed. *Id.* at 268.

Similarly, the Supreme Court in *United States Parole Commission v. Geraghty* recognized the "flexible character" of Article III and held that an action did not become moot when the named plaintiff's claim expired. 445 U.S. 388, 400 (1980). After reviewing the justifications for class actions, the Court concluded that the purpose of the standing requirements was to assure "sharply

presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions." *Id.* at 403.

In order to have concrete factual setting with self-interested parties, where the named plaintiff did not purchase the product, the claims related to the not purchased products must be nearly identical to the claims for the purchased product. In the court's recent decision in *Ivie v. Kraft*, the court did not allow the named representative to proceed with claims related to products she did not purchase because the products were different and contained different labels. *See* 2013 WL 685372, *3, *5 (N.D. Cal. Feb. 25, 2013). On the other hand, in *Donohue v. Apple, Inc.*, the court allowed the named plaintiff to proceed with claims based upon a number of iPhone models even though he had not purchased every model where Apple admitted that every model had the same defect. 871 F. Supp. 2d 913, 922 (N.D. Cal. 2012).

Here, Lanovaz brings claims related to 53 Twinings' teas that all contain the label "natural source of antioxidants." SAC ¶¶ 7-8. Twinings makes 51 of the teas from the same plant, camellia sinensis, while it makes the two varieties of red tea from the rooibos plant. SAC ¶ 142. Of the 53 teas, Lanovaz personally bought three varieties of green tea, three varieties of black tea, and no red or white tea. SAC ¶¶ 7-8. Because the claims for 51 of the varieties of tea are based upon the exact same label describing the same product, camellia sinensis, the court finds that Lanovaz has standing to sue on behalf of the purchasers of these teas and thus denies Twinings' motion with respect to these products. Red tea, on the other hand, is made from a different plant and is thus a significantly different product. Therefore, the court strikes Lanovaz's claims related to the two varieties of red tea because they are not sufficiently identical.

**B.      Particularity**

In its previous order, relying on Rule 9(b), the court ordered Lanovaz to set forth specifically the misleading labels or information she relied in making her purchase. Order re MTD 4. Twinings argues that the SAC contains numerous references to its website, but does not clearly state which specific statements Lanovaz relied on in making her purchases. Def.'s Br. 5-7, Dkt. No. 51. Lanovaz responds that the SAC set out in detail the portions of Twinings' website that Lanovaz read and relied on in paragraphs: 3, 11, 13-14, 18, 58, 98, and 101-102. Opp'n 5, Dkt. No. 54.

ORDER RE MOTION TO DISMISS
Case No. C-12-02646-RMW
SW
- 4 -

The court agrees that parts of the SAC are unclear. For example, paragraph 133 states that Lanovaz relied on the package labeling, then lists numerous statements from Twinings website, and finally states that Lanovaz made her purchase decision based on the labeling without ever stating that she used or relied on the statements on the website, which the SAC just recited. SAC ¶ 133. Paragraph 11 only refers to "claims regarding the presence of beneficial antioxidants and the health claims" on the website, which is not sufficiently specific by itself. SAC ¶ 11. Paragraph 98 also quotes some sections of the website without any statement that Lanovaz relied on those sections, although some sentences are identical to ones quoted in paragraph 18 where she does allege reliance. SAC ¶ 18. Finally, in paragraph 14, Lanovaz alleges that she reviewed and relied on information on Twinings' website, including "the section regarding teas for sale" and the link entitled "Tea & Health," but nowhere in the complaint does she allege the specific contents of those sections on which she relied.[1] SAC ¶ 14.

Nevertheless, the court finds that other paragraphs do adequately allege that Lanovaz relied on statements from the website and alleges those statements. In particular, paragraph 14 states that Lanovaz read and relied on the statements on Twinings' website "as specified above" in making her purchase decision. FAC ¶ 14. Both paragraphs 3 and 13 contain significant quotes from Twinings' website, which are reasonably incorporated by "as specified above" in paragraph 14. While the language could be clearer, this is adequate. Paragraph 18 is more specific in listing specific statements from the website that Lanovaz relied on in making her decision to purchase Twinings' tea. Paragraphs 101 and 102 could be clearer, but paragraph 101 clearly sets forth health related claims on Twinings' website, which the SAC alleges Lanovaz saw, and then paragraph 102 states she saw and relied on health related claims on Twinings' website. Again, this is adequate.

Therefore, the court strikes the claim "natural source of protective antioxidants" and "ideal source of antioxidants" from paragraph 133 because the Lanovaz does not allege anywhere else in the SAC that she read these statements on the website and relied on them.[2] She has adequately

---

[1] The SAC mentions "Tea and Health" once in the complaint in a quote from an FDA letter describing a Lipton webpage, but Twinings is clearly not liable for that. *See* SAC ¶ 24.

[2] At oral arguments, Lanovaz claimed that she alleged reliance on "natural source of protective antioxidants" in paragraph 18 of the SAC. Upon review, the complaint only alleges reliance on a product *label* with the phrase "natural source of protective antioxidants" not on a *webpage*.

1  alleged reliance on the rest of the claims from the website listed in paragraph 133 in other
2  paragraphs. Similarly, the court strikes the sections of paragraph 98 quoting Twinings' website,
3  which the SAC does not specifically allege Lanovaz relied on in making her purchase decision.
4  Finally, the court strikes the line "including the section regarding teas for sale as well as the link on the
5  website entitled 'Tea & Health'" from paragraph 14 because it is not sufficiently clear as to what it
6  refers. The court does not strike paragraph 11, but notes that it fails to allege what specific
7  statements on the website Lanovaz relied on and therefore does not set forth a misrepresentation on
8  which she can proceed.

**C.  Unjust Enrichment**

Lanovaz admits that the court already dismissed her unjust enrichment claim and states that she left it in the SAC by mistake. Opp'n 5. Lanovaz has stated she would re-file an amended complaint without the claim and is ordered to do so.

### III.  ORDER

The court dismisses all claims related to Twinings' red tea, but the claims based upon the "natural source of antioxidants" label appearing on green, black, and white teas that Lanovaz did not purchase may proceed. The court strikes all references to sections of the website, which the complaint does not allege Lanovaz read and relied upon, as explained above. The court orders Lanovaz to file an amended complaint consistent with this order by June 24, 2013.

Dated: May 23, 2013

_Ronald M. Whyte_
RONALD M. WHYTE
United States District Judge