UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NANCY LANOVAZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWININGS NORTH AMERICA, INC.,<br><br>Defendant. | Case No. C-12-02646-RMW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL**<br><br>[Re Docket Nos. 89; 107; 108; 118] |

Plaintiff Nancy Lanovaz brings claims on her own behalf and on behalf of a purported class of tea purchasers against Twinings for its allegedly "misbranded" green, black, and white teas. She claims that Twinings' tea labels and website[1] violate federal regulations, which California has incorporated into state law, and are misleading. Lanovaz now moves for class certification, appointment of class representative, and appointment of class counsel. Because Lanovaz has not presented a viable theory for monetary relief, the court denies the motion for class certification

---

[1] The allegedly misleading statements on Twinings' website have been removed, although the statements at issue still appear on the tea labels.

ORDER RE CLASS CERTIFICATION
Case No. C-12-02646-RMW
LRM

- 1 -

under Rule 23(b)(3), but grants the motion for class certification for injunctive relief only under Rule 23(b)(2).[2]

## I. BACKGROUND

### A. Procedural History

Lanovaz alleges that she paid a premium for Twinings' green and black tea and would not have purchased them but for Twinings' unlawful labeling. She asserts that Twinings violated California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), and the Consumers Legal Remedies Act ("CLRA"). Dkt. No. 62, Third Amended Complaint ("TAC") ¶¶ 157-215. Lanovaz seeks monetary and injunctive relief for herself and on behalf of a purported class of tea purchasers who bought allegedly mislabeled products.[3] At the heart of Lanovaz's claim is a label describing Twinings' tea as a "Natural Source of Antioxidants," which currently appears on the 51 varieties of Twinings' tea at issue in this lawsuit. Twinings' green teas also include a longer text description on the label, which states in relevant part, "[a] natural source of protective antioxidants . . . Twinings' Green Teas provide a great tasting and healthy tea drinking experience." Dkt. No. 70-2 (Stern Decl. Ex. B). Twinings' website also contained statements about antioxidants.

The gravamen of Lanovaz's complaint is that Twinings' labels violate U.S. Food and Drug Administration ("FDA") labeling regulations and thus are illegal under California law, which has adopted these regulations.[4] Although no one disputes that Twinings' tea contains flavonoids, a type of antioxidant, the FDA does not allow nutrient content claims about flavonoids because the FDA has not established a recommended daily intake for flavonoids. *See* 21 C.F.R. 101.54(g)(1). Lanovaz argues that Twinings' labels and website are deceptive, misleading, and unlawful even if they are technically true.

---

[2] Because the court decides this motion on the damages issue, the court did not rely on the declarations of Julie Caswell or Edward Scarbrough, and defendant's motions to strike those declarations are denied as moot. *See* Dkt. No. 107 (Motion to Strike Caswell Decl.); Dkt. No. 108 (Motion to Strike Scarbrough Decl.). The evidence submitted with the Motion to Supplement, Dkt. No. 118, also has no impact on the damages issue, and the Motion to Supplement is denied as moot.

[3] The proposed class is "All persons in the State of California who, since May 23, 2008, purchased Defendant's green, black and white tea products."

[4] California Health & Safety Code section 110100(a) adopts "[a]ll food labeling regulations of the FDA and any amendments to those regulations" and section 110670 provides that "[a]ny food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto."

ORDER RE CLASS CERTIFICATION
Case No. C-12-02646-RMW
LRM
- 2 -

This court has issued three substantive orders in response to Twinings' motions to dismiss and motion for summary judgment. The first order struck, without prejudice, some of Lanovaz's claims. Dkt. No. 46. The second order struck all references from the complaint to sections of the website which Lanovaz did not read and on which she had not relied and dismissed all claims related to labeling of red tea because Lanovaz did not buy any red tea. Dkt. No. 60. Immediately after deposing the named plaintiff, Ms. Lanovaz, Twinings moved for summary judgment, primarily arguing that Ms. Lanovaz's deposition testimony proved that she did not rely on the antioxidant label when making her purchasing decisions. Dkt. No. 69. The court denied summary judgment, finding that reliance presented a material issue disputed fact. Dkt. No. 97.

Plaintiff now moves for class certification, Dkt. No. 89; Twinings opposes, Dkt. No. 101.

## II.  ANALYSIS

Class certification is a matter within the discretion of the district court, *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001), although the determination must be supported by sufficient factual findings, *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001), and a proper understanding of the applicable law, *Hawkins v. Comparet–Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001).

Federal Rule of Civil Procedure 23(a) lists four conjunctive criteria that must be met to certify a class action: numerosity, commonality of issues, typicality of the representative plaintiffs' claims, and adequacy of representation. Fed. R. Civ. P. 23(a). A class may only be certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). The plaintiff bears the burden of demonstrating the requirements of Rule 23(a) are satisfied. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

In addition to fulfilling the four prerequisites of Rule 23(a), a class action must also meet one of the disjunctive requirements of Rule 23(b) by satisfying the criteria set forth in at least one of the three types of class actions. Fed. R. Civ. P. 23. Plaintiff alleges that this class action may be maintained under either Rule 23(b)(2) or Rule 23(b)(3).

### A. The Rule 23(a) requirements are met

Rule 23(a) requires that the class must, at a minimum, satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation in order to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012); *see* Fed. R. Civ. P. 23(a). Further, while Rule 23(a) is silent as to whether the class must be ascertainable, courts have held that the rule implies this requirement as well. *See, e.g.*, *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 672 (N.D. Cal. 2011).

The parties do not dispute that the proposed class is sufficiently numerous or that plaintiff will be an adequate representative.

#### 1. Ascertainability

A class is ascertainable if the class is defined with "objective criteria" and if it is "administratively feasible to determine whether a particular individual is a member of the class." *See Wolph v. Acer America Corp.*, No. 09-01314, 2012 WL 993531, at *1-2 (N.D. Cal. Mar. 23, 2012) (certifying a class where "the identity and contact information for a significant portion of these individuals can be obtained from the warranty registration information and through Acer's customer service databases").

Twinings argues that the proposed class lacks ascertainability because few, if any, company records exist to identify purchasers or which products they bought, and consumers did not keep receipts or product containers. This is not persuasive. Courts in the Ninth Circuit have certified many classes similar to the class proposed here. *See, e.g.*, *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) (beverages); *In re POM Wonderful, LLC Marketing and Sales Practices Litig.*, No. 10-02199 DDP RZX, 2012 WL 4490860 (C.D. Cal. 2012), *later decertified on other grounds*, *In re POM Wonderful LLC*, No. 10-02199 DDP RZX, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) (juice products); *Guido v. L'Oreal, USA, Inc.*, No. 11-1067 CAS JCX, 2013 WL 3353857 (C.D. Cal. July 1, 2013) (hair products); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 560 (S.D. Cal. 2012) (multivitamins); *Ries v. Arizona Beverages USA, LLC,* 287 F.R.D. 523, 536 (N.D. Cal. 2012) (tea products); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 595 (C.D. Cal. 2011) (homeopathic products); *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282, 286 (C.D. Cal. 2011) (yogurt products);

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, No. 07-1306 JVS RNBX, 2008 WL 4906433 (C.D. Cal. Nov. 13, 2008) (nutritional supplements).

Further, Judge Bernal of the Central District of California recently explained that "[i]In this Circuit, it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *McCrary v. The Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443, at *25 (C.D. Cal. Jan. 13, 2014); *see also Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) ("As long as the class definition is sufficiently definite to identify putative class members, the challenges entailed in the administration of this class are not so burdensome as to defeat certification.") (quotation and alteration omitted). The alternative would be the death of consumer class actions. *See Ries*, 287 F.R.D. at 535 (holding that consumers' failure to retain receipts does not defeat ascertainability because otherwise "there would be no such thing as a consumer class action"); *Astiana*, 291 F.R.D. at 500 ("If class actions could be defeated because membership was difficult to ascertain at the class certification stage, 'there would be no such thing as a consumer class action.'") (quoting *Ries*, 287 F.R.D. at 536). As the class here is defined with "objective criteria" and it is "administratively feasible to determine whether a particular individual is a member of the class," *see Wolph*, 2012 WL 993531, at *1-2, the Court finds that plaintiff's proposed class definition meets the ascertainability requirement.

### 2. Commonality and Typicality

To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As the Supreme Court explained in *Dukes*, the key consideration in assessing commonality is "not the raising of common questions—even in droves—but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. (internal citations and quotation omitted; emphasis in original).

Twinings makes a number of overlapping arguments under the headings of commonality, typicality, and predominance. The commonality requirement of Rule 23(a)(2) is construed less rigorously than the "predominance" requirement of Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). For purposes of Rule 23(a)(2), a perfect identity of facts and law is not required; relatively "minimal" commonality will do. *Id.* at 1019–20. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1020.

(a) Plaintiff is a member of the proposed class as to products that are substantially similar to those she purchased

Plaintiff's proposed class includes 51 Twinings products. Plaintiff has purchased 6 of those products. Twinings argues that plaintiff cannot include the 45 unpurchased products in her class definition.

Twinings bases its typicality challenge on Judge Davila's decision in *Major v. Ocean Spray Cranberries, Inc.*, 5:12-CV-03067 EJD, 2013 WL 2558125, at *4 (N.D. Cal. June 10, 2013). However, the *Major* case involved unique facts that justified the court's finding that typicality was lacking in that case. In *Major*, the proposed class was "broad and indefinite," as it "would [have] include[d] any of Defendant's products represented to contain no artificial colors, flavors or preservatives but which contained artificial colors, flavors or preservatives." *Id.* The *Major* plaintiff sought to include entire product lines based on a single purchase, and the plaintiff "fail[ed] to link any of those products to any alleged misbranding issue" related to the plaintiff's purchase. *Id.* Furthermore, the *Major* court observed "that the labels and nutrition claims on each of Defendant's products may be unique to that product itself." *Id.* The plaintiff purchased a pomegranate blueberry drink and alleged misrepresentations based on label language making specific claims about blueberries. Yet the plaintiff sought to certify a class that would include products having label statements making no claims about blueberries. As the *Major* court explained, "[t]he evidence needed to prove Plaintiff's claim that the Diet Sparkling Pomegranate Blueberry drink contained false or misleading labeling is not probative of the claims of unnamed class members who purchased products within the 'Sparkling' line that did not contain blueberries." *Id.*

In the instant case, all products included in the proposed class definition, including the product Lanovaz purchased, have "natural source of antioxidants" label statements and are made from the same type of tea plant. Therefore, rather than raising the problems encountered in *Major*, this case is much more similar to the multiple cases in this Circuit in which courts have found the typicality requirement met, even when the representative plaintiff did not purchase every accused product. *See*, *e.g.*, *Astiana*, 291 F.R.D. at 502-03; *Ries*, 287 F.R.D. at 539-40; *Chavez*, 268 F.R.D. at 377-78. The Court thus that Lanovaz's claims are typical of the proposed class.

(b)  Materiality can be proven by common evidence

Twinings argues that "natural source of antioxidants" has no common meaning, and therefore an individualized inquiry as to materiality is required.  Resolving this question requires some discussion of California consumer protection law. For Lanovaz's "unlawful" and "deception" claims, Lanovaz must prove that the allegedly unlawful or deceptive label statement was material. "A representation is 'material,' . . . if a reasonable consumer would attach importance to it or if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011)) (emphasis in original). Moreover, the Supreme Court in *Amgen* held that "[b]ecause materiality is judged according to an objective standard, the materiality of [defendant's] alleged misrepresentations and omissions is a question common to all members of the class [plaintiff] would represent." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013). As materiality is an objective inquiry, no individualized examination of materiality is necessary. To establish materiality, Lanovaz need only prove that a reasonable consumer would attach importance to Twinings' antioxidant statements, or that Twinings knows or has reason to know that its consumers are likely to regard the label statements as important in making purchasing decisions. This question is common to the class.

**B. Certification under Rule 23(b)(2) for injunctive relief only**

Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

ORDER RE CLASS CERTIFICATION
Case No. C-12-02646-RMW
LRM

- 7 -

declaratory relief is appropriate respecting the class as a whole." Plaintiff asks for an injunction requiring Twinings to "immediately cease and desist from selling its Misbranded Food Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action." Dkt. No. 62 53, ¶ C.

If the class is certified under Rule 23(b)(2), none of the class members would receive an individualized award of monetary damages. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011). Judge Seeborg explained this fully in another food mislabeling class action:

> This case exemplifies the kind of action that may be appropriate for certification under Rule 23(b)(2), at least insofar as plaintiffs request: (1) declaratory relief that the alleged practices are unlawful, and (2) injunctive relief prohibiting defendants from continuing them. . . .
>
> Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes,* 131 S.Ct. at 2557. Although plaintiffs characterize restitution as a form of equitable relief, rather than for monetary damages, whether the monetary relief is understood as legal damages or an equitable remedy is irrelevant to this analysis. *See id.* Of course, monetary recovery is not entirely prohibited in the (b)(2) class context. For example, class claims for statutory or punitive damages that do not turn on the individual circumstances of class members may be sufficiently "incidental" to warrant certification under (b)(2). By contrast, here plaintiffs seek individualized awards of monetary restitution which would require individualized assessments of damages based on how many products the class member had bought. *See In re Flash Memory Antitrust Litig.,* No. 07–0086, 2011 WL 1301527, at *7 (N.D. Cal. Mar. 31, 2011) ("Because the restitution amount is dependent on the particular purchases made ... monetary relief will dictate the key procedures utilized in this case and require individualized inquiries and hearings."). Even though plaintiffs' claim for disgorgement could be subject to common proof because the amount of damages could be calculated based on overall beverage sales, rather than sales to individual consumers, it would still be unmanageable under Rule 23(b)(2), which lacks Rule 23(b)(3)'s notice and opt-out requirements designed to facilitate the award of monetary damages to individual class members. *See Dukes,* 131 S.Ct. at 2559.
>
> Furthermore, although the monetary amount sought may be small per class member, in the aggregate they can hardly be said to be incidental to the injunctive relief sought. Although plaintiffs describe their pursuit of monetary relief as secondary to their desire for corrective advertising and cessation of the allegedly deceptive labeling practices when arguing for class certification, based on the entire record in this case it is clear the monetary relief predominates. "Plaintiffs clearly state that the crux of their

claims is that [they] paid artificially-inflated prices for [Twinings Tea]" because it was labeled as all natural. *In re Flash Memory Antitrust Litig.,* 2011 WL 1301527, at *7.

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 541-42 (N.D. Cal. 2012), appeal dismissed (Jan. 25, 2013) (injunctive class later decertified for failure to diligently prosecute the action, *see* 2013 WL 1287416 (N.D. Cal. Jan. 6 2014)).

Based on the explanation above, the class certification is granted under Rule 23(b)(2) for the purposes of declaratory and injunctive relief and denied to the extent plaintiffs seek monetary damages, including restitution, refund, reimbursement and disgorgement. *Id.*

**C.  Plaintiff must present a legally relevant damages model under Rule 23(b)(3)**

In order to certify a class under Federal Rule of Civil Procedure 23(b)(3), plaintiff must show that monetary relief resulting from the defendants' conduct is measurable "on a class-wide basis through use of a common methodology." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1430 (2013) (internal quotations omitted) (rejecting class certification where only damages model accounted for four possible antitrust violations when district court had limited case to single actionable antitrust violation).  The plaintiff's damages "model purporting to serve as evidence of damages in this class action must measure only those damages attributable to [the defendant's conduct]. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3). Calculations need not be exact . . . but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case . . . ." *Id.* at 1433 (internal citations and quotations omitted).

*Comcast* has been interpreted as "reiterate[ing] a fundamental focus of the Rule 23 analysis: The damages must be capable of determination by tracing the damages to the plaintiff's theory of liability. However, so long as the damages can be determined and attributed to a plaintiff's theory of liability, damage calculations for individual class members do not defeat certification." *Lindell v. Synthes USA*, 11-CV-02053-LJO-BAM, 2014 WL 841738 (E.D. Cal. Mar. 4, 2014). The Ninth Circuit has also restated this rule post-*Comcast*, noting that "plaintiffs must be able to show that

ORDER RE CLASS CERTIFICATION
Case No. C-12-02646-RMW
LRM

- 9 -

their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

Applying *Comcast* to this case, the court first considers what damages are recoverable as a result of Twinings' alleged mislabeling and then considers whether Lanovaz has presented a damages model capable of isolating those damages.

**D. Lanovaz Has Not Presented a Sufficient Damages Model Under *Comcast***

    **1. Lanovaz's damages are limited to the price premium paid as a result of Twinings' allegedly misleading statements**

The False Advertising Law, the Unfair Competition Law, and the CLRA authorize a trial court to grant restitution to private litigants asserting claims under those statutes. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006). Restitutionary relief is an equitable remedy, and its purpose is "to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *see also Cortez v. Purolator Air Filtration Products Co*., 23 Cal. 4th 163, 177 (2000).

The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received. *Colgan*, 135 Cal. App. 4th at 700 (rejecting restitutionary award for products "Made in U.S.A." where expert "did not attempt to quantify either the dollar value of the consumer impact or the advantage realized by Leatherman."); *In re POM Wonderful LLC*, No. 10-02199 DDP RZX, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (rejecting a full refund model because consumers benefited from consumption of the defendant's products). This calculation contemplates the production of evidence that attaches a dollar value to the "consumer impact or advantage" caused by the unlawful business practices. *Id.* Restitution can then be determined by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices. *See, e.g., Astiana v. Ben & Jerry's Homemade, Inc.*, C 10-4387 PJH, 2014 WL 60097 at *12-13 (N.D. Cal. Jan. 7, 2014) (denying class certification for "all natural" ice cream labels based in part on insufficient proof of damages).

ORDER RE CLASS CERTIFICATION
Case No. C-12-02646-RMW
LRM

- 10 -

Applying *Colgan* to this case, plaintiff must provide substantial evidence showing the price premium attributable to Twinings use of the label "Natural Source of Antioxidants." *Colgan* at 699 (requiring substantial evidence to support award of restitution).

### 2. Dr. Capps has not provided a damages model capable of linking a price premium to the allegedly misleading statements

Plaintiff's damages expert, Dr. Oral Capps, provided a declaration proposing three models for measuring damages. *See* Dkt. No. 91-8 (Capps Decl.). First, Dr. Capps proposed refunding the entire purchase or "register" price of the tea. Capps Decl. ¶¶ 8-10. As discussed above, this is not the proper measure of damages. Dr. Capps then proposed two methods of determining the price difference between teas with the "Natural Source of Antioxidants" label and those without.

First is the "benefit of the bargain" rule or price premium model. *Id.* ¶ 12. Under this approach, Dr. Capps would compare the price of Twinings tea to the price of "comparable" products that do not have the antioxidant label. *Id.* ¶ 15. Dr. Capps has no way of linking the price difference, if any, to the antioxidant label or controlling for other reasons why "comparable" products may have different prices. *See* Dkt. No. 114-6 (Capps Reply Decl.) ¶¶ 14-15 (explaining that Lanovaz did not claim that the price of tea depends on the antioxidant label and that a price premium might not be attributable to antioxidant claims). As Judge Pregerson summarized in the *POM* case, "the Price Premium model simply calculates what the price difference [is]. This damages 'model' does not comport with *Comcast*'s requirement that class-wide damages be tied to a legal theory . . . ." *POM*, 2014 WL 1225184, at *5. Thus, the "benefit of the bargain" method is not a legally sufficient method of calculating damages and does not comply with Rule 23.

The second method is an "econometric or regression analysis." *Id.* ¶ 16. This method would allow Dr. Capps to "estimate[e] the portion of sales gleaned by Twinings as a result of the false and misleading use of the term "Natural Source of Antioxidants" on its tea products." *Id.* This method might arrive at a legally relevant damages analysis, because it "can be translated into the percentage of sales attributed specifically to the claims made by the Defendant." *Id.* ¶ 22.

ORDER RE CLASS CERTIFICATION
Case No. C-12-02646-RMW
LRM

- 11 -

Plaintiffs run into a problem with their regression analysis. In Dr. Capps' reply declaration, he expressly abandons a regression analysis as a method of calculating damages in this case. Dr. Capps states:

> In light of the evidence provided by the President of Twining North America, Inc. that statement about antioxidants have been on packages of green and black teas since 2003, indeed the use of regression or econometric analysis to assess class-wide or aggregate damages is ruled out. That is, the antioxidant claims have been on the labels over the entire class period. Hence, it is not possible in this case to invoke a regression analysis approach because of the lack of any variable in sales or units sold attributed to the antioxidant claims.

Capps Reply Decl. ¶ 20.[5]

Without a regression analysis, plaintiffs do not present any damages model capable of estimating the price premium attributable to Twinings' antioxidant labels. Because the price premium attributable to the antioxidant labels in the only legally permissible measure of damages, *see Colgan*, plaintiff has failed to satisfy the requirements for class certification under *Comcast*.

### E. Appointment of Class Counsel and Class Representative

Under Rule 23(c), "An order certifying a class action . . . must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g) directs a court appointing class counsel to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (iii) counsel's knowledge of the applicable law, (iv) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff has requested that the firms of Pratt & Associates, Coleman Law Firm, and Barrett Law Group, P.A. be appointed as Class Counsel. Twinings does not object. These firms have undertaken the responsibilities on behalf of the class, and pursued the litigation on behalf of Plaintiff and the proposed class. The Court finds that Pierce Gore of Pratt & Associates, J. Price Coleman of Coleman Law Firm, and Brian Herrington of Barrett Law Group, P.A. are qualified to serve as Class Counsel, and hereby appoints them as such.

---

[5] Although Dr. Capps only indicates that the labels on black and green teas did not change during the class period, he appears to have ruled out applying a regression analysis to white tea as well. *Id.* (". . . it is not possible in this case to invoke a regression analysis approach" )

ORDER RE CLASS CERTIFICATION
Case No. C-12-02646-RMW
LRM

- 12 -

United States District Court
For the Northern District of California

Plaintiff Nancy Lanovaz is appointed as class representative. Plaintiff is a member the class, there are no conflicts between her and other Class members, and, based on the record before the Court, the plaintiff has demonstrated an ability and willingness to prosecute this litigation vigorously.

### III.  ORDER

For the reasons stated above, the court GRANTS IN PART AND DENIES IN PART the motion for class certification.

The following class is certified under Rule 23(b)(2) for the purposes of injunctive and declaratory relief only:

> All persons in the State of California who, since May 23, 2008, purchased Defendant's green, black and white tea products.

The following persons are expressly excluded from the Class: (i) Defendant and its subsidiaries and affiliates; (ii) all persons who make a timely election to be excluded from the proposed Class; (iii) governmental entities; and (iv) the Court to which this case is assigned and its staff.

Plaintiff NANCY LANOVAZ is hereby designated and appointed as representative for the class on all claims asserted on behalf of the class.

The following attorneys are designated and appointed as Class Counsel:  Pierce Gore of Pratt & Associates, J. Price Coleman of Coleman Law Firm, and Brian Herrington of Barrett Law Group, P.A.

Dated: April 24, 2014

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

ORDER RE CLASS CERTIFICATION
Case No. C-12-02646-RMW
LRM
- 13 -